UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NEAL FALLON, JEAN-PAUL GASTER, DAN  :
MAINES, and RICHARD SULT, individually and :
collectively p/k/a CLUTCH,  :  No. 08-CIV-4452 (JES)(JCF)
                Plaintiffs,  :
                  :
        vs.  :  **ANSWER AND**
                  :  **COUNTERCLAIMS**
DRT ENTERTAINMENT, INC. and DEREK  :
SHULMAN,  :  (Counterclaimants Request
               Defendants.  :  Trial by Jury)
------------------------------------------------------------x

       Defendants, DRT Entertainment, Inc. and Derek Shulman, by their attorneys, Rosenfeld & Kaplan, LLP, for their answer to the complaint, state as follows:

## THE PARTIES

       1.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1.

       2.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

       3.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

       4.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4.

       5.     Admit the allegations contained in paragraph 5, except deny the allegations regarding DRT's purported liability.

       6.     Admit the allegations contained in paragraph 6, except deny the allegations regarding Schulman's purported liability.

## JURISDICTION AND VENUE

7. Deny the allegations contained in paragraph 7, except admit that an agreement (the "Agreement") is attached as Exhibit A to the Complaint and respectfully refer the Court to the Agreement for its full terms, force and effect.

8. Deny the allegations contained in paragraph 8, except admit that plaintiffs purport to invoke the subject matter jurisdiction and the supplemental jurisdiction of this Court pursuant to the statutory provisions cited to in this paragraph.

9. Deny the allegations contained in paragraph 9, except admit that plaintiffs purport to invoke the subject matter jurisdiction of this Court pursuant to the statutory provisions cited to in this paragraph.

10. Deny the allegations contained in paragraph 10, except admit that plaintiffs purport to assert personal jurisdiction over the defendants on various grounds including the Agreement and with regard thereto respectfully refer the Court to the Agreement for its full terms, force and effect.

11. Deny the allegations contained in paragraph 11, except admit that plaintiff purport to invoke this Court's venue pursuant to the statutory provision cited in this paragraph.

## ALLEGATIONS RELEVANT TO ALL COUNTS

12. Deny the allegations contained in paragraph 12, except admit that on or about October 23, 2003 Clutch entered into an Agreement with DRT, and respectfully refer the Court to the Agreement for its full terms, force and effect.

13. Deny the allegations contained in paragraph 13 and respectfully refer the Court to the Agreement for its full terms, force and effect.

14. Deny the allegations contained in paragraph 14, and respectfully refer the Court to

the Agreement for its full terms, force and effect.

15. Deny the allegations contained in paragraph 15, and respectfully refer the Court to the Agreement for its full terms, force and effect.

16. Deny the allegations contained in paragraph 16, and respectfully refer the Court to the Agreement for its full terms, force and effect.

17. Deny the allegations contained in paragraph 17, and respectfully refer the Court to the Agreement for its full terms, force and effect.

18. Deny the allegations contained in paragraph 18, and respectfully refer the Court to the Agreement for its full terms, force and effect.

19. Deny the allegations contained in paragraph 19, and respectfully refer the Court to the Agreement for its full terms, force and effect.

20. Deny the allegations contained in paragraph 20, and respectfully refer the Court to the Agreement for its full terms, force and effect.

21. Deny the allegations contained in paragraph 21, and respectfully refer the Court to the Agreement for its full terms, force and effect.

22. Deny the allegations contained in paragraph 22.

23. Deny the allegations contained in paragraph 23.

24. Deny the allegations contained in paragraph 24, and respectfully refer the Court to the Agreement for its full terms, force and effect.

25. Deny the allegations contained in paragraph 25, except admit that reference is made to a September 30, 2007 statement (the "9/30/2007 Statement") and respectfully refer the Court to that Statement for its full terms, force and effect.

26. Deny the allegations contained in paragraph 26, and respectfully refer the Court to

the 9/30/2007 Statement for its full terms, force and effect.

27. Deny the allegations contained in paragraph 27, and respectfully refer the Court to the 9/30/2007 Statement for its full terms, force and effect.

28. Deny the allegations contained in paragraph 28, except deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding the data tracking services.

29. Deny the allegations contained in paragraph 29.

30. Deny the allegations contained in paragraph 30.

31. Deny the allegations contained in paragraph 31.

32. Deny the allegations contained in paragraph 32.

33. Deny the allegations contained in paragraph 33.

34. Deny the allegations contained in paragraph 34.

## COUNT ONE
(Copyright Infringement)

35. Defendants repeat and reallege their responses to paragraphs 1 through 34 above, as if fully set forth herein.

36. Deny the allegations contained in paragraph 36.

37. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38. Deny the allegations contained in paragraph 38.

39. Deny the allegations contained in paragraph 39.

40. Deny the allegations contained in paragraph 40.

41. Deny the allegations contained in paragraph 41.

## COUNT TWO
(Copyright Infringement)

42. Defendants repeat and reallege their responses to paragraphs 1 through 41 above, as if fully set forth herein.

43. Deny the allegations contained in paragraph 43.

44. Deny the allegations contained in paragraph 44.

45. Deny the allegations contained in paragraph 45.

46. Deny the allegations contained in paragraph 46.

47. Deny the allegations contained in paragraph 47.

## COUNT THREE
(Breach of Contract)

48. Defendants repeat and reallege their responses to paragraphs 1 through 47 above, as if fully set forth herein.

49. Deny the allegations contained in paragraph 49.

50. Deny the allegations contained in paragraph 50.

51. Deny the allegations contained in paragraph 51.

52. Deny the allegations contained in paragraph 52.

53. Deny the allegations contained in paragraph 53.

## COUNT FOUR
(Unfair Competition and Trademark Infringement)

54. Defendants repeat and reallege their responses to paragraphs 1 through 53 above, as if fully set forth herein.

55. Deny the allegations contained in paragraph 55.

56. Deny the allegations contained in paragraph 56.

57. Deny the allegations contained in paragraph 57.

58. Deny the allegations contained in paragraph 58.

59. Deny the allegations contained in paragraph 59.

## COUNT FIVE
(State Unfair Competition)

60. Defendants repeat and reallege their responses to paragraphs 1 through 59 above, as if fully set forth herein

61. Deny the allegations contained in paragraph 61.

62. Deny the allegations contained in paragraph 62.

63. Deny the allegations contained in paragraph 63.

64. Deny the allegations contained in paragraph 64.

65. Deny the allegations contained in paragraph 65.

## COUNT SIX
(Violation of Right of Publicity)

66. Defendants repeat and reallege their responses to paragraphs 1 through 65 above, as if fully set forth herein.

67. Deny the allegations contained in paragraph 67.

68. Deny the allegations contained in paragraph 68.

69. Deny the allegations contained in paragraph 69.

## COUNT SEVEN
(For an Accounting)

70. Defendants repeat and reallege their responses to paragraphs 1 through 69 above,

as if fully set forth herein

    71.    Deny the allegations contained in paragraph 71.

    72.    Deny the allegations contained in paragraph 72.

    73.    Deny the allegations contained in paragraph 73.

## COUNT EIGHT
(Declaration of Termination of License Agreement)

    74.    Defendants repeat and reallege their responses to paragraphs 1 through 73 above, as if fully set forth herein

    75.    Deny the allegations contained in paragraph 75.

    76.    Deny the allegations contained in paragraph 76.

    77.    Deny the allegations contained in paragraph 77.

## COUNT NINE
(Conversion)

    78.    Defendants repeat and reallege their responses to paragraphs 1 through 77 above, as if fully set forth herein

    79.    Deny the allegations contained in paragraph 79.

    80.    Deny the allegations contained in paragraph 80.

    81.    Deny the allegations contained in paragraph 81.

    82.    Deny the allegations contained in paragraph 82.

    83.    Deny the allegations contained in paragraph 83.

## FIRST AFFIRMATIVE DEFENSE

    84.    The Complaint fails, in whole or part, to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

85. Defendants deny that they infringed plaintiffs copyrights. However, pleading in the alternative, in the event that it is determined that defendants did infringe a valid copyright, defendants assert that they were not aware and had no reason to believe their acts constituted copyright infringement and that any award of statutory damages should be limited by application of the innocent infringer defense as set forth in 17 U.S.C. § 504(c)(2).

## THIRD AFFIRMATIVE DEFENSE

86. The claims asserted in the Complaint are barred, in whole in or part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

87. The claims alleged in the complaint are barred, in whole or in part, by the applicable statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

88. If it is ultimately determined that plaintiffs suffered damages as alleged in the Complaint, such injuries or damages were due to the acts of parties which defendants were not obligated to control or supervise, and were not the direct or proximate results of any acts or omissions of defendants.

## SIXTH AFFIRMATIVE DEFENSE

89. If it is ultimately found that plaintiff suffered injury or damages as alleged in the Complaint, defendants failed to take reasonable steps to avoid injury or to mitigate any damages allegedly suffered as a result of any acts or omissions of defendants.

## SEVENTH AFFIRMATIVE DEFENSE

90. Because plaintiff did not register some or all of its purported copyright designs

with the Copyright Office, plaintiff's remedies are limited by application of 17 U.S.C.§ 412.

## EIGHTH AFFIRMATIVE DEFENSE

91. Plaintiffs claims are barred in whole or in part by the doctrines of laches and/or waiver.

## NINTH AFFIRMATIVE DEFENSE

92. Plaintiffs claims are barred, in whole or in part, by the doctrine of set-off and or recoupment.

## TENTH AFFIRMATIVE DEFENSE
## AND FIRST COUNTERCLAIM
(Breach of Contract)

93. Counterclaim plaintiff DRT Entertainment ("DRT") is a New York corporation with offices in New York, New York.

94. On information and belief, counterclaim defendant Neil Fallon ("Fallon") is a Maryland resident. Fallon is a member of a musical group named "Clutch."

95. On information and belief, counterclaim defendant Jean-Paul Gaster ("Gaster") is a Maryland resident. Gaster is a member of a musical group named "Clutch."

96. On information and belief, counterclaim defendant Dan Maines ("Maines") is a Maryland resident. Maines is a member of a musical group named "Clutch."

97. On information and belief, counterclaim defendant Richard Sult ("Sult") is a West Virginia resident. Sult is a member of a musical group named "Clutch."

98. Fallon, Gaster, Maines and Sult are musicians who perform collectively as a musical group under the name Clutch. Fallon, Gaster, Maines and Sult are all of the members of Clutch.

99. In or about October 23, 2003, DRT entered into a contract (the "Agreement") with

Fallon, Gaster, Maines and Sult (collectively referred to as "Clutch"). (A copy of the Agreement is annexed as Exhibit A to plaintiffs' complaint).

100. Paragraph 16 of the Agreement provides that it is to be governed "by the laws of the State of New York," and that the parties to the Agreement have each consented to the jurisdiction over them of the federal and state courts located in New York County.

101. Paragraph 2(e) of the Agreement provides that the Agreement is to run for a term of 25 years.

102. Paragraph 2(c) of the Agreement provides that the "Territory" covered by the Agreement is the "universe."

103. Paragraph 1(a)(i) provides that Clutch is licensing "exclusively to DRT during the Term of this Agreement and in the Territory the Master Recordings comprising the next Album embodying Artist's performance( the "First Album"), including all rights, title and interest which Artist may have in the musical and other performances embodied therein . . DRT shall have the sole and exclusive right and license during the Term and within the Territory with respect [to] such Album for all purposes, including without limitation the right to manufacture, advertise, promote, sell and otherwise exploit Phonographic Records."

104. Paragraph 1(b)(i) affords DRT with an irrevocable option to a second and third album (with the term album as used in these counterclaims to encompass all conventional compact discs, audio tapes, phonographic records, or other electronic compilations) on the "same terms and conditions applicable to the First Album" as set forth in paragraph 1(a)(i).

105. Paragraph 2(a) of the Agreement provides that Clutch will not "re-release or authorize the re-recording of any Master Recording subject to this Agreement during the Term."

106. Pursuant to the terms of the Agreement, on or about March 30, 2004 DRT released

the musical album entitled "Blast Tyrant," which contained 15 songs performed by Clutch.

107. Pursuant to paragraph 1(b)(i), following the release of "Blast Tyrant" DRT exercised its exclusive option to release two additional Clutch Albums.

108. On or about June 21, 2005 DRT released the musical album entitled "Robot Hive/Exodus," which contained 14 songs performed by Clutch.

109. On or about March 27, 2007 DRT released the musical album entitled "From Beale Street to Oblivion," which contained 12 songs performed by Clutch.

110. In violation of DRT exclusive rights to the Master recording including its licensing and re-recording rights each of the counterclaim defendants Fallon, Gaster, Maines and Sult breached the agreement by re-recording and releasing numerous musical compositions.

111. In or about 2005, the album "Clutch Live in Flint" was released for commercial distribution by River Road Records.

112. "Clutch Live in Flint" contained the songs performed by Clutch entitled "Mercury," "Profits of Doom," "The Mob Goes Wild," "Cypress Grove," "Subtle Hustle," "WYSIWYG," "In the Wake of the Swollen Goat," "The Regulator," and "Army of Bono," each of which songs was contained on the DRT release of "Blast Tyrant."

113. On or about December 13, 2007, the album "Heard it All Before: Live at the Hi-Fi Bar- Melbourne Australia" was released for commercial distribution.

114. "Heard it All Before: Live at the Hi-Fi Bar- Melbourne Australia" contained the songs performed by Clutch entitled "Small Upsetters," ""Never Be Moved," "Burning Beard," and "Mice & Gods," which were contained on the DRT release entitled "Robot Hive/Exodus," "Profits of Doom," "The Mob Goes Wild," "Cypress Grove," and "Promoter (of Earthbound Causes)," which were contained on the DRT release entitled "Blast Tyrant," and "You Can't Stop

Progress," "Power Player," "The Devil & Me," "Child of the City," "Mr. Shiny Cadillackness," "White's Ferry," "Black Umbrella," and "Electric Worry/One Eye Dollar," which were contained on the DRT release entitled "From Beale Street to Oblivion."

115. On information and belief, the album to be entitled "Full Fathom Five Audio Field Recordings," is to be released in or about August, 2008 by Weathermaker Music.

116. On information and belief, the album "Full Fathom Five Audio Field Recordings" contains the songs performed by Clutch entitled "10001110101," which was contained on the DRT release entitled "Robot Hive/Exodus"; "The Mob Goes Wild," "Cypress Grove," and "Promoter (of Earthbound Causes)," which were contained on the DRT release entitled "Blast Tyrant"; and "Child of the City," "The Devil & Me," "Mr. Shiny Cadillackness," "Electric Worry," and "One Eye Dollar," which were contained on the DRT release entitled "From Beale Street to Oblivion."

117. On information and belief, a DVD to be entitled "Full Fathom Five Audio Field Recordings," is to be released in or about August, 2008 by Weathermaker Music.

118. On information and belief, the DVD "Full Fathom Five Audio Field Recordings" contains the songs performed by Clutch entitled "10001110101," which was contained on the DRT release entitled "Robot Hive/Exodus," "The Mob Goes Wild," and "Promoter (of Earthbound Causes)," which were contained on the DRT release entitled "Blast Tyrant," and "Child of the City," "The Devil & Me," "Mr. Shiny Cadillackness," "Electric Worry," and "One Eye Dollar," which were contained on the DRT release entitled "From Beale Street to Oblivion."

119. On or about August 12, 2005 the album "Pitchfork & Lost Needles," was released by Megaforce Records.

120. On information and belief, in or about August, 2008, a "vinyl" LP version of

"Pitchfork & Lost Needles," is to be released by Megaforce Records.

121.  "Pitchfork & Lost Needles" (both the cd album and, on information and belief, the newly released vinyl LP) contains the songs "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake)."

122.  On information and belief, the songs "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake)" were produced from copies of Master Recordings which were the exclusive property of DRT.

123.  The exclusive rights to the above listed songs and recordings belonged to DRT during the term of the Agreement.

124.  Each of Fallon, Gaster, Maines and Sult has breached the terms of paragraph 2(a) the Agreement by utilizing songs, or allowing songs, which were the exclusive property of DRT, to be utilized on the albums "Clutch Live in Flint," "Heard it All Before: Live at the Hi-Fi Bar-Melbourne Australia," "Full Fathom Five Audio Field Recordings" and "Pitchfork & Lost Needles," and on the video DVD "Full Fathom Five Audio Field Recordings."

125.  Fallon, Gaster, Maines and Sult's conduct has caused harm to DRT.

126.  DRT is entitled to the recovery of damages in an amount to be determined at trial with interest and costs.

### ELEVENTH AFFIRMATIVE DEFENSE AND SECOND COUNTERCLAIM
(Breach of Contract)

127.  Counterclaim plaintiff repeats and realleges each and every allegation contained in paragraphs 93 to126 as if fully set forth herein.

128.  Paragraph 2(a) of the Agreement provides that Clutch "shall not release, or permit the release of any sound recording embodying Artist's performances prior to the date which is

seven (7) months following the later of (i) the initial commercial release of the last Master Recordings delivered to DRT hereunder . . . or (ii) the date which is nine (9) months following Delivery of the last Master Recordings Delivered to DRT hereunder."

129.  In violation of the terms of the Agreement, Clutch and each of Fallon, Gaster, Maines and Sult, released, or permitted the release, of the albums "Clutch Live in Flint," "Heard it All Before: Live at the Hi-Fi Bar- Melbourne Australia," and "Pitchfork & Lost Needles," in violation of the above terms of paragraph 2(a) of the Agreement in that each of said albums was released "prior to the date which is seven (7) months following the later of (i) the initial commercial release of the last Master Recordings delivered to DRT hereunder . . . or (ii) the date which is nine (9) months following Delivery of the last Master Recordings Delivered to DRT hereunder."

130.  On or about August 3, 2004, the Clutch album Jam Room," consisting of musical performances by Clutch, was released by Megaforce Records in the United States.

131.  On information and belief, each of Fallon, Gaster, Maines and Sult permitted the release of "Jam Room" by Megaforce Records.

132.  The release of "Jam Room" was in violation of the terms of paragraph 2(a) of the Agreement in that said albums was released "prior to the date which is seven (7) months following the later of (i) the initial commercial release of the last Master Recordings delivered to DRT hereunder . . . or (ii) the date which is nine (9) months following Delivery of the last Master Recordings Delivered to DRT hereunder."

133.  Fallon, Gaster, Maines and Sult's conduct, and breaches of paragraph 2(a) of the Agreement have caused harm to DRT.

134.  DRT is entitled to the recovery of damages in an amount to be determined at trial

with interest and costs.

## TWELFTH AFFIRMATIVE DEFENSE
## AND THIRD COUNTERCLAIM
(Breach of Contract)

135.  Counterclaim plaintiff repeats and realleges each and every allegation contained in paragraphs 93 to134 as if fully set forth herein.

135.  Pursuant to the terms of the Agreement, DRT holds the exclusive license rights to the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake)."

136.  At all relevant times, each of Fallon, Gaster, Maines and Sult knew that DRT owned and controlled the exclusive license rights to the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake)."

137.  The counterclaim defendants were not authorized or legally permitted by DRT to copy, reproduce, perform, distribute or in any way commercially use the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake)."

138.  The counterclaim defendants knowingly and wilfully used the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake) on the album "Pitchfork & Lost Needles," and on the newly released vinyl LP version of "Pitchfork & Lost Needles," without the permission of DRT and in violation of DRT's ownership interests.

139.  The unauthorized use by the counterclaim defendants of the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake) infringes on DRT's exclusive license rights.

140. Fallon, Gaster, Maines and Sult's conduct has caused harm to DRT.

141. DRT is entitled to the recovery of damages in an amount to be determined at trial with interest and costs.

**THIRTEENTH AFFIRMATIVE DEFENSE
AND FOURTH COUNTERCLAIM**
(Conversion, Alternative Claim)

142. Counterclaim plaintiff repeats and realleges each and every allegation contained in paragraphs 93 to 141, as if fully set forth herein.

143. Pursuant to the terms of the Agreement, DRT holds the exclusive ownership rights to the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake)."

144. The counterclaim defendants, without right thereto, copied and took possession of said copy of the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake)."

145. Counterclaim defendants have exercised dominion and control of the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake) by virtue of their unauthorized copying and use.

146. By their conduct, the counterclaim defendants have interfered with DRT's ownership of and rights in the Master Recordings of "What Would a Wookie Do? (2005 studio outtake)" and "Bottoms Up, Socrates (2005 studio outtake).

147. The aforesaid acts of the counterclaim defendants have caused and will continue to cause damage to DRT in an amount to be determined at trial.

**WHEREFORE**, defendant and counterclaim plaintiff DRT Entertainment, Inc. and defendant Derek Shulman demand that judgment be entered: 1) dismissing the complaint in its entirety; 2) awarding DRT on its first counterclaim damages in an amount to be determined at trial, with interest thereon; 3) awarding DRT on its second counterclaim damages in an amount to be determined at trial, with interest thereon; 4) awarding DRT on its third counterclaim damages in an amount to be determined at trial, with interest thereon; 5) awarding DRT on its fourth counterclaim damages in an amount to be determined at trial, with interest thereon; and 6) awarding defendants and counterclaim plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 11, 2008

ROSENFELD & KAPLAN, LLP

By: _____
Tab K. Rosenfeld (TR-9212)
Steven M. Kaplan (SK- 4228)
535 Fifth Avenue, Suite 1006
New York, New York 10017
(212) 682-1400
*Attorneys for Defendants and Counterclaim Plaintiff*